PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REVOLUTION SALES & MARKETING, INC., *et al.*, | ) ) | CASE NO. 5:14CV00239 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| ONCORE GOLF TECHNOLOGY, INC., *et al.*, | ) ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 5] |

Before the Court is a motion to dismiss, ECF No. 5, filed by Defendants OnCore Golf Technology, Inc. ("OnCore"), InVentures Group Holdings, LLC ("InVentures"), Keith Blakely, and Bret Blakely (collectively "the OnCore Defendants"). Plaintiffs Revolution Sales & Marketing, Inc. ("Revolution Golf"), and HMC Golf, LLC ("HMC Golf"), have filed an opposition brief. ECF No. 19. The OnCore Defendants have filed a reply. ECF No. 22. For the reasons provided below, the Court denies the motion to dismiss.

## I. Factual and Procedural Background

This action was removed from the Summit County Court of Common Pleas pursuant to the diversity statute, 28 U.S.C. § 1332. ECF No. 1. According to the complaint, *see* ECF No. 1-2, Plaintiffs Revolution Golf and its successor in interest, HMC Golf, were at all relevant times

(5:14CV00239)

engaged in the business of developing and manufacturing golf balls.[1] Plaintiffs allege that the OnCore Defendants, as well as Defendants Noonan Technologies, LLC ("Noonan"), Douglas Dufaux, and Timothy Owens, entered into business and contractual relationships with Plaintiffs, which relationships involved Plaintiff's development and manufacture of golf balls with "a hollow metal core," known as "HMC balls." ECF No. 1-2 at 3. The gravamen of the complaint lies in the allegations that Defendants "breached the parties' agreements," conspired "as part of a fraudulent scheme to wrongfully acquire confidential information on Plaintiffs' research and development," and "wrongfully deprive[d] Plaintiffs of the fruits of their labors." ECF No. 1-2 at 7.

Plaintiffs allege the following facts with respect to the OnCore Defendants, specifically. Noonan, which is owned by DuFaux and Owens, and NanoDynamics, Inc., whose chief executive officer was Keith Blakely, promised Plaintiffs a joint venture licensing agreement for Plaintiffs to develop and manufacture the HMC ball. ECF No. 1-2 at 3. Plaintiffs "reasonably relied on these representations in furnishing confidential information to Defendants on its research and development of the HMC ball." ECF No. 1-2 at 3. Keith Blakely, however, "never sent the promised joint venture license agreement," but, instead, formed OnCore with Bret Blakely "for purposes of misappropriating [Plaintiffs'] confidential information and work product." ECF No. 1-2 at 3.

Noonan and Plaintiffs "then entered into an Exclusive License Agreement . . . in October 2009 for [Plaintiffs] to develop, manufacture, and sell the HMC ball." ECF No. 1-2 at 4. Plaintiffs hired DuFaux in the autumn of 2009 to help secure approval from the United States Golf Association

---

[1] For ease of reference, the Court will refer to Revolution Golf and HMC Golf together and separately as "Plaintiffs," unless it is necessary to distinguish the two entities.

2

(5:14CV00239)

("USGA") for the ball.  ECF No. 1-2 at 4.  Thereafter, DuFaux "improperly shar[ed] [Plaintiffs']
confidential information on further research, development and planned marketing of the HMC ball
with Oncore and Blakely's venture capital firm," InVentures.  ECF No. 1-2 at 4.  After Plaintiffs
discovered this, Blakely agreed that he would use Plaintiffs' confidential information "solely for
raising funds to cover [Plaintiffs'] costs in launching the HMC ball."  ECF No. 1-2 at 4.

Meanwhile, Plaintiffs "continu[ed] to furnish Defendants with confidential information and
dozens of HMC balls to assist Defendants in their efforts to secure USGA approval and raise funds
for the launch of the ball."  ECF No. 1-2 at 5. In the summer of 2010, DuFaux and Owens
"fraudulently arranged" for Noonan to license the HMC ball to OnCore while the Exclusive License
Agreement between Noonan and Plaintiffs was still in effect.  ECF No. 1-2 at 5.  Blakely, DuFaux,
and Owens "then had Noonan purportedly terminate [Plaintiffs'] Exclusive License Agreement in
October 2010."  ECF No. 1-2 at 5.

In March, 2011, "the parties reached a settlement of their dispute through a Manufacturing
and Supply Agreement" (referenced in the complaint as Exhibit 6 and attached thereto), under which
OnCore agreed to purchase 100,000 dozen HMC balls from Plaintiffs.  ECF No. 1-2 at 5.  Plaintiffs
aver that they were fraudulently induced into entering the Manufacturing and Supply Agreement, that
OnCore lacked the funds to purchase the 100,000 dozen balls, and that OnCore had no intention to
purchase the balls.  ECF No. 1-2 at 6.  In October, 2013, Defendants obtained USGA approval for
the HMC ball.  ECF No. 1-2 at 6.  OnCore has since "advised [Plaintiffs] that it has no intention of
honoring its contractual commitment to purchase the 100,000 dozen balls."  ECF No. 1-2 at 6.

3

(5:14CV00239)

Plaintiffs allege that they have ownership rights to the "confidential information they developed on the HMC ball" and that they will suffer "irreparable harm" if Defendants "directly or indirectly manufacture or sell HMC balls or other balls that incorporate or utilize confidential information wrongfully obtained from Plaintiffs." ECF No. 1-2 at 7.  On the basis of the above allegations, Plaintiff seek a preliminary and permanent injunction prohibiting all Defendants from directly or indirectly manufacturing or selling HMC balls or other balls which incorporate confidential information developed by Plaintiffs.  ECF No. 1-2 at 7.

The OnCore Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on the basis of an arbitration clause contained in Paragraph 14 of the Manufacturing and Supply Agreement. ECF No. 5-1 at 1.  In the alternative, the OnCore Defendants move to stay this action and compel arbitration "in the event this Court somehow finds that Plaintiffs have pleaded a claim that can be maintained . . . without reference to the contract or the relationship at issue."[2]  ECF No. 5-1 at 15. Plaintiffs filed an opposition brief, ECF No. 19, to which the OnCore Defendants filed a reply.  ECF No. 22.  The motion to dismiss is ripe for the Court's consideration.

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss a complaint for failing to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the complaint must allege enough facts to "raise a right to relief above the speculative level" and "state a claim that is

---

[2] OnCore Defendants also filed a motion to defer the Case Management Conference scheduled for April 2, 2014 or, in the alternative, to permit OnCore's counsel to attend by telephone.  *See* ECF No. 18.  The Court denied the motion to defer, conducted the CMC and permitted OnCore's counsel to attend via telephone, and augured, at the CMC, the denial of the motion to dismiss.

4

(5:14CV00239)

plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," but, where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" the complaint will not survive a Rule 12(b)(6) motion. *Id.* at 679.  The pleading standard of Rule 8 does not require detailed factual allegations but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id*. at 678.  "In reviewing a dismissal under Rule 12(b)(6), all allegations in the complaint should be taken as true, and the complaint is to be construed liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

### III. Discussion

The OnCore Defendants assert that the arbitration clause in the Manufacturing and Supply Agreement requires that Plaintiffs' claims against them must be resolved by arbitration instead of litigation.  ECF No. 5-1 at 14.  The arbitration clause provides in relevant part:

> All claims, disputes and other matters in question among the parties arising out of or relating to this Agreement, *other than any demand for equitable remedies such an injunction or specific performance*, shall be decided by arbitration in accordance with the Arbitration rules of the American Arbitration Association in effect as of the date of this Agreement.

ECF No. 5-5 at 8 (emphasis added).

(5:14CV00239)

Even though Plaintiffs seek, exclusively, injunctive relief with respect to their causes of action, the OnCore Defendants nonetheless claim that the arbitration clause requires Plaintiffs to arbitrate, not litigate, their claims.  ECF No. 5-1 at 7.  According to the OnCore Defendants: (1) there can be no basis in the complaint for equitable relief because the Manufacturing and Supply Agreement contains multiple provisions in which Plaintiffs agreed that OnCore is the owner of all intellectual property attendant to the golf ball at issue; and (2) the complaint fails to state a claim for which equitable relief can be granted.  ECF No. 5-1 at 11-14.

The Court disagrees.  Liberally construing the pleadings in favor of Plaintiffs, they have alleged a plausible claim that the OnCore Defendants fraudulently induced Plaintiffs into divulging and transferring over confidential and proprietary information with respect to the HMC ball.  Viewed in the light most favorable to Plaintiffs, the pleadings also sufficiently allege their right to pursue an injunction prohibiting the OnCore Defendants from exploiting proprietary work product that they allegedly wrongfully acquired from Plaintiffs.[3]  While, the Manufacturing and Supply Agreement contains provisions in which the parties agreed that the intellectual property associated with the HMC ball would be owned by OnCore, paragraph 3(c) of the Manufacturing and Supply Agreement provides, however, that "[t]his Agreement may be terminated by HMC upon the occurrence of a material breach of this Agreement by OnCore . . . ."  ECF No. 5-5 at 2.  The complaint sufficiently alleges that OnCore materially breached the agreement when it announced that "it has no intention of honoring its contractual commitment to purchase the 100,000 dozen balls" from Plaintiffs.  ECF

---

[3] The Court notes that Plaintiffs have not moved for a preliminary injunction at this time. The Court will consider the merits of such a motion, and the supporting evidence, at an appropriate juncture after the motion has been filed and briefed.

(5:14CV00239)

No. 1-2 at 6.  The complaint is not a model of clarity,[4] nevertheless, a liberal reading allows for a plausible claim that the Manufacturing and Supply Agreement was voided because the OnCore Defendants fraudulently induced Plaintiffs into entering it.  The cases cited by the OnCore Defendants for their contention that "broad arbitration clauses are sufficient to encompass fraudulent inducement claims"; ECF No. 5-1 at 8; are predicated on materially different facts and are therefore distinguishable from the case at hand.  *See Matter of M. W. Kellogg Co.*, 9 A.D.2d 744, 745, 192 N.Y.S.2d 869 (1st Dept. 1959) ("the representations complained of [were] set forth within the contract itself"); *Matter of Amerotron Corp.*, 3 A.D.2d 899, 899, 162 N.Y.S.2d 214 (1st Dept. 1957) ("respondent failed to rescind the contract and elected to recognize the contract and claim damages for the fraud").

### IV. Conclusion

Based on the foregoing, the Court denies the motion to dismiss docketed at ECF No. 5.  The Court also denies the alternative motion to stay the proceedings and compel arbitration because, at this stage of the litigation, Plaintiffs' claims are beyond the reach of the arbitration clause.


IT IS SO ORDERED.

 April 4, 2014                                      /s/ Benita Y. Pearson
Date                                            Benita Y. Pearson
                                                United States District Judge

---

[4] At the April 2, 2014 case management conference, Plaintiffs' counsel were invited to improve the complaint by the June 30, 2014 cutoff date.  *See* ECF No. 26.